PARRO, J.
 

 |2The mover in a motion to establish international visitation appeals a judgment that denied her motion and ordered the surrender of her minor child’s passport. For the following reasons, the judgment is affirmed in part, reversed in part, and remanded with instructions.
 

 Factual Background and Procedural History
 

 Murad K. Mohsen (Murad) and Damaris Fernandez Mohsen (Damaris) were married on October 2, 2002, in California. Of the marriage, one child, Miranda (child), was born on September 26, 2004. Following their separation in March 2007, Murad filed a petition for divorce in a Louisiana district court. At that time, Murad was residing in Louisiana, and Damaris was residing in Florida. After the trial court overruled an exception raising the objection of lack of subject matter jurisdiction that had been filed by Damaris, the parties entered into an interim stipulated judgment signed by the court on November 14, 2007, which provided for the sharing of physical custody of their minor child. In that interim judgment, it was stated in pertinent part:
 

 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the parties agree that neither the parties nor their agents shall take the minor child Miranda Murad Mohsen outside of the United States without further order by the Court.
 

 IT IS FURTHER ORDERED, ADJUDGED AND DECREED that this interim stipulated judgment establishing child custody shall maintain effect until such time as a trial on the merits may be held to detennine a custody arrangement in the best interests of the child, taking into consideration all relevant factors bearing on each party’s parental qualifications.
 

 On December 31, 2007, the parties entered into a stipulated judgment providing for joint custody of the child with Damaris being designated as the domicilary parent, the establishment of a physical custody schedule, and child support. The parties further agreed that jui’isdiction over the matter and Murad’s petition for divorce would remain in Louisiana.
 

 Pursuant to the terms of the inteiim judgment, Damaris filed a motion on February 25, 2008, to establish international visitation. In her motion, Damaris |3expressed her desire to transport the child to Nicaragua for 12 days (from March 20 to March 31, 2008) for the purpose of visiting with the child’s maternal grandparents. She prayed for an order directing Murad to appear in court and show cause why she should not be allowed to transport their child to Nicaragua beginning March 20, 2008, and returning to the United States on March 31, 2008. The court issued a show cause order, setting a hearing of this matter on March 18, 2008.
 

 At the healing, Murad appeared without counsel, Damaris did not appear as she was reportedly in Miami, Florida, and counsel appeared on Damaris’ behalf. In addition to denying Damaris’ motion, the trial court declared that Damaris was prohibited from transporting Miranda to Nicaragua until such time as Nicaragua became “an accepted signatory party to the Hague Convention on 25 October 1980 of the Civil Aspects of International Child Abduction” and ordered Damaris to surrender the child’s passport to the court.
 
 *221
 
 Damaris appealed, asserting that the trial court abused its discretion in:
 

 failing to perform a balancing test of each of the Uniform International Child Abduction Prevention Act’s factors to determine the risk of abduction, foreclosing any possibility of cross-examination of Murad, and directing her to surrender the passport of their minor child and prohibiting the child from leaving the United States.
 

 Discussion
 

 Damaris contends that in ruling on her motion, the trial court should have considered all of the factors set forth in the Uniform International Child Abduction Prevention Act (Child Abduction Prevention Act), LSA-E.S. 13:1851 et seq., rather than focusing exclusively on Nicaragua’s nonparticipation in the Hague Convention.
 

 An application to the court for an order, if not presented in some other pleading, shall be by motion which, unless made during trial or hearing or in open court, shall be in writing. LSA-C.C.P. art. 961. If the order applied for by written motion is one to which mover is clearly entitled without supporting proof, the court may grant the order ex parte and without hearing the adverse party. LSA-C.C.P. art. 963.
 

 |4The order sought by Damaris in this case was not one to which she was clearly entitled and required supporting proof; accordingly, the motion had to be served on and tried contradictorily with Murad.
 
 See
 
 LSA-C.C.P. art. 963. Despite the need for supporting proof, Da-maris chose not to attend the hearing, and no evidence was offered by her counsel in support of her motion. Therefore, since Damaris failed to meet her burden of proof, we find no error in the trial court’s denial of her motion to establish international visitation.
 
 [1]
 
 Accordingly, we affirm that portion of the judgment.
 

 Nonetheless, the judgment also ordered that the child’s passport be surrendered to the court, and this portion of the judgment will now be reviewed. Louisiana Revised Statute 13:1854 of the Child Abduction Prevention Act sets forth the types of actions in which abduction prevention measures may be ordered, as follows:
 

 A. A court on its own motion may order abduction prevention measures in a child-custody proceeding if the court finds that the evidence establishes a credible risk of abduction of the child.
 

 B. A party to a child-custody determination or another individual or entity having a right under the law of this state or any other state to seek a child-custody determination for the child may file a petition seeking abduction prevention measures to protect the child under this Part.
 

 C. A prosecutor or public authority designated under R.S. 13:1837 may seek a warrant to take physical custody of a child under R.S. 13:1859 or other appropriate prevention measures.
 

 Notably, Damaris’ motion to establish international visitation did not seek abduction prevention measures as set forth in LSA-R.S. 13:1854(B). Furthermore, Mu-rad did not respond to Damaris’ motion by filing a petition seeking abduction prevention measures.
 
 [2]
 
 Moreover, LSA-R.S. 13:1854(C) is clearly not applicable in this case. However, because Damaris’ motion involves an issue that is included within
 
 *222
 
 the ambit of a child-custody proceeding,
 
 [3]
 
 the trial court had authority, on its own motion, to order abduction prevention measures, but only upon a finding that the evidence established a credible |firisk of abduction of the child.
 
 See
 
 LSA-R.S. 13:1854(A).
 

 Pursuant to LSA-R.S. 13:1857(A), in determining whether there is a credible risk of abduction of a child, the court shall consider all of the following factors and any evidence that the petitioner or respondent:
 

 (1) Has previously abducted or attempted to abduct the child.
 

 (2) Has threatened to abduct the child.
 

 (3) Has recently engaged in activities that may indicate a planned abduction, including any of the following:
 

 (a) Abandoning employment.
 

 (b) Selling a primary residence.
 

 (c) Terminating a lease.
 

 (d) Closing bank or other financial management accounts, liquidating assets, hiding or destroying financial documents, or conducting any unusual financial activities.
 

 (e) Applying for a passport or visa or obtaining travel documents for the respondent, a family member, or the child.
 

 (f) Seeking to obtain the child’s birth certificate or school or medical records.
 

 (4) Has engaged in domestic violence, stalking, or child abuse or neglect.
 

 (5) Has refused to follow a child-custody determination.
 

 (6) Lacks strong familial, financial, emotional, or cultural ties to the United States.
 

 (7) Has strong familial, financial, emotional, or cultural ties to another country.
 

 (8) Is likely to take the child to a country that either:
 

 (a) Is not a party to the Hague Convention on the Civil Aspects of International Child Abduction and does not provide for the extradition of an abducting parent or for the return of an abducted child.
 

 (b) Is a party to the Hague Convention on the Civil Aspects of International Child Abduction but either:
 

 (i) The Hague Convention on the Civil Aspects of International Child Abduction is not in force between the United States and that country.
 

 (ii) Is noncompliant according to the most recent | ^compliance report issued by the United States Department of State.
 

 (iii) Lacks legal mechanisms for immediately and effectively enforcing a return order under the Hague Convention on the Civil Aspects of International Child Abduction.
 

 (c) Poses a risk that the child’s physical or emotional health or safety would be endangered in the country because of specific circumstances relating to the child or because of human rights violations committed against children.
 

 (d) Has laws or practices that would either:
 

 (i) Enable the respondent, without due cause, to prevent the petitioner from contacting the child.
 

 (ii) Restrict the petitioner from freely traveling to or exiting from the country because of the petition
 
 *223
 
 er’s gender, nationality, marital status, or religion.
 

 (iii) Restrict the child’s ability legally to leave the country after the child reaches the age of majority because of a child’s gender, nationality, or religion.
 

 (e) Is included by the United States Department of State on a current list of state sponsors of terrorism.
 

 (f) Does not have an official United States diplomatic presence in the country.
 

 (g) Is engaged in active military action or war, including a civil war, to which the child may be exposed.
 

 (9) Is undergoing a change in immigration or citizenship status that would adversely affect the respondent’s ability to remain in the United States legally.
 

 (10) Has had an application for United States citizenship denied.
 

 (11) Has forged or presented misleading or false evidence on government forms or supporting documents to obtain or attempt to obtain a passport, a visa, travel documents, a Social Security card, a driver’s license, or other government-issued identification card or has made a misrepresentation to the United States government.
 

 (12) Has used multiple names to attempt to mislead or defraud.
 

 (13) Has engaged in any other conduct the court considers relevant to the risk of abduction.
 

 At the hearing on this matter, Murad testified on examination by the court as follows. Murad, a native Jordanian, had been in the United States for 12 years and a 17citizen of the United States since 1999. Damaris was from Nicaragua. Murad and Damaris met in San Francisco in 2002 where she had been for five years. They married in October 2002 in Redwood City, California, and lived in Sanmatio, California, for three or four years. They have one child, who was three-and-a-half years old. While in California, Murad worked as a limousine driver in San Francisco.
 

 Murad further testified that he and Da-mans then moved to Farmington, Minnesota, where he worked as a manager of a fast food restaurant.
 
 [4]
 
 In April 2007, Damaris went to Miami, Florida, for a birthday party for her 80-year-old grandmother, where Damaris remained. Damaris informed Murad that their relationship was not working and that she did not want him to move with her to Miami. Subsequently, Murad moved to Baton Rouge, Louisiana, and filed a petition for divorce. Pursuant to the interim stipulated child custody order, he had physical custody of their minor child every other two months for a period of two months on a rotating basis with Damaris.
 

 According to Murad, ninety-nine percent of Damaris’ family lived in San Francisco and one percent resided in Miami. Da-mans’ mother and sister last visited San Francisco in January 2008 and had just returned to Nicaragua. Murad explained that Damaris’ mother had a visa for five years which enabled her to travel back and forth from Nicaragua to the United States. To his knowledge, Damaris was not a United States citizen; therefore, he was concerned about her ability to return to the United States if something happened to her papers while she was out of the country.
 

 After noting that Nicaragua was not a signatory to the Hague Convention and would not be required to cooperate -with the United States in the event of an abduction, the trial court denied Damaris’ motion for international visitation. In so ruling, the trial court stated that it would not authorize a visit by the child to Nicaragua
 
 *224
 
 until Damaris could offer proof that the United States had recourse in the event of an abduction. When asked by the trial court judge about the child’s passport, Mu-rad stated that Damaris had it and that he feared, in light of what he had heard from others, that she |smight go to Nicaragua even though the court denied her motion. In light of Murad’s concerns, the trial court ordered that the child’s passport be surrendered to the court.
 

 Under the Child Abduction Prevention Act, the trial court had authority to order Damaris to surrender the child’s passport to the court.
 
 See
 
 LSA-R.S. 13:1854(A);
 
 see also
 
 LSA-R.S. 13:1858(C)(3)(b). Since the Child Abduction Prevention Art did not become effective until August 15, 2007, Damaris probably did not realize that the trial court could order such abduction prevention measures when she filed her motion on February 25, 2008, to establish international visitation. However, no one may avail himself of ignorance of the law. LSA-C.C. art. 5. As a party to a child-custody proceeding requesting international visitation, Damaris should be charged with knowledge of Louisiana laws relating to abduction prevention measures.
 

 Nonetheless, we find it necessary to vacate the portion of the judgment that ordered the surrender of the child’s passport in light of the trial court’s reliance solely on Nicaragua’s nonparticipation in the Hague Convention in its determination of the existence of a credible risk of abduction. Clearly, a country’s nonparticipation in the Hague Convention is only one factor to be considered by a court in determining whether a credible risk of abduction exists.
 
 See
 
 LSA-R.S. 13:1857(A)(8)(a). Consideration of the other factors enumerated in LSA-R.S. 13:1857(A) is also required.
 
 [5]
 
 In the interest of justice, we remand this matter for a full hearing on, and reconsideration of, all of the factors involved in a determination of the issue of whether there was a credible risk of abduction of the child, thereby justifying the surrender of the child’s passport.
 

 Decree
 

 For the foregoing reasons, that portion of the judgment that denied Damaris’ motion to exercise international visitation is affirmed. Otherwise, the remaining portions of the judgment are vacated. This matter is remanded for a full hearing on the issue of whether there was a credible risk of abduction justifying a surrender of the child’s passport. In resolving this issue on remand, the trial court shall consider all of |athe factors set forth in LSA-R.S. 13:1857(A)(1) through (13). In the event that the evidence offered at such a hearing preponderates in favor of a determination of a credible risk of abduction of the child, the trial court must enter an abduction prevention order that complies with the directives of LSA-R.S. 13:1858.
 
 [6]
 
 Pending a hearing on this matter, the passport of the minor child, Miranda Murad Mohsen, shall remain in the possession of The Family Court of East Baton Rouge Parish. Costs of this appeal are assessed to the parties equally.
 

 AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
 

 [1]
 

 . On appeal, Damaris recognized that the denial of her motion regarding the proposed March 2008 visit is now moot.
 

 [2]
 

 . “Petition” includes a motion or its equivalent. LSA-R.S. 13:1852(6).
 

 [3]
 

 . "Child-custody proceeding” means a proceeding in which legal custody, physical custody, or visitation with respect to a child is at issue. LSA-R.S. 13:1852(4).
 

 [4]
 

 . Murad testified that he resided in Minnesota for a period of three months.
 

 [5]
 

 . Had the legislature intended that a country’s nonparticipation in the Hague Convention serve as an automatic basis for the issuance of abduction prevention measures, it would have stated so.
 

 [6]
 

 . Section 1858 details what must be included in an abduction prevention order,